IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 20, 2015

**STATE OF TENNESSEE v. RANDY SHAWN MOORE**

**Appeal from the Criminal Court for Knox County**
**No. 103877     G. Scott Green, Judge**

_____

**No. E2014-01790-CCA-R3-CD – Filed July 15, 2015**

_____

The Defendant-Appellant, Randy Shawn Moore, entered guilty pleas to two counts of aggravated assault and received an effective sentence of 8 years with the manner of service to be determined by the trial court. On appeal, the Defendant-Appellant argues that the trial court abused its discretion in denying his application for judicial diversion. Upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and D. KELLY THOMAS, JR., J., joined.

Mark E. Stephens, District Public Defender, and Jessica Green, Assistant Public Defender, Knoxville, Tennessee, for the Defendant-Appellant, Randy Shawn Moore.

Robert E. Cooper, Jr., Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Charme Allen, District Attorney General; and Zane Scarlett, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On July 14, 2014, the Defendant entered guilty pleas to two counts of aggravated assault against his then-wife, Alta Galloway, the victim in this case. The underlying facts, as summarized by the State at the plea submission hearing, are as follows:

> [The victim] and the [D]efendant . . . . were separated [at the time of the offenses]. And on [April 12, 2014][,] [the victim] went back over to the house to get some clothes, and she . . . went with a friend. When they arrived in the car, [the Defendant] . . . was visibly upset, started screaming

at them. [The victim] and her friend both got out of the vehicle. But when they saw things were getting worse, they got back into the vehicle.

[The Defendant] went over to his vehicle and got a gun, came back over, and pointed i[t] right at [the victim] who was in . . . the passenger seat. [The Defendant] . . . put the gun to her throat . . . [and the victim] indicated that maybe she [did not] think the gun [was] loaded, so he fired the gun up into the air showing that it was loaded, then put it back to her forehead and fired up into the air again, and then put the gun back onto her. And finally he started shooting the gun several times. At that point[,] [the victim and her friend] were able to leave that area before he could get the gun reloaded. But then he started shooting at them as they were going away.

He was arrested on that matter and bonded out. Apparently, things got better because on June 23[, 2014,] . . . [the victim] and the [D]efendant . . . were together again. They got into another argument. This time [the Defendant] tried to strangle her. He put his hands around her neck, restricting her breathing. She was able to get free. He then put her in a chokehold to the point where she started losing her vision. She was able then to push him off and get free and leave the residence.

Pursuant to the negotiated plea agreement, the Defendant received a sentence of five years for count one and three years for count two, to be served consecutively for an effective sentence of eight years. The Defendant agreed to the length of the service but sought judicial diversion and probation.

At the September 3, 2014 sentencing hearing, the State introduced the Defendant's presentence report and argued that judicial diversion was not appropriate in this case given the violent nature of the offenses and the fact that the Defendant committed the second offense while on bond for the first offense. The victim testified and asked the trial court to have "mercy" on the Defendant. She stated that the Defendant is "a wonderful person" who "deserves rehabilitation." When the court explained that as a condition of probation or judicial diversion, the Defendant would not be allowed to have contact with her, she stated, "That's why I filed for divorce. . . . [H]e is to be out of my life and go on with his and be successful." The Defendant acknowledged that he "did something really stupid" and told the court that he did not want to go back into custody. He stated, "I love [the victim] with all my heart, but I had to let her go. That's all."

Following the hearing, the trial court denied the Defendant's application for judicial diversion and instead imposed a sentence of split confinement, suspended after

the service of 90 days.  Subsequently, the Defendant filed a timely notice of appeal to this court.

## ANALYSIS

On appeal, the Defendant challenges the trial court's denial of judicial diversion. He argues that the trial court abused its discretion by failing to consider the required factors and failing to identify the factors applicable to the Defendant's case before determining whether judicial diversion was appropriate.  The State responds that the trial court properly denied judicial diversion.  We agree with the State.

In State v. King, 432 S.W.3d 316, 324-25 (Tenn. 2014), the Tennessee Supreme Court held that the abuse of discretion standard of review accompanied by a presumption of reasonableness, which was delineated in Bise and its progeny, applied to appellate review of a trial court's decision to grant or deny judicial diversion.  However, the court made clear that the application of the Bise standard of review does not abrogate the common law factors for judicial diversion set out in State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996), and State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998).

Tennessee Code Annotated section 40-35-313 outlines the requirements for judicial diversion.  After a qualified defendant is either found guilty or pleads guilty, a trial court has the discretion to defer further proceedings and place that defendant on probation without entering a judgment of guilt.  T.C.A. § 40-35-313(a)(1)(A) (2006).  A qualified defendant is defined as a defendant who pleads guilty to or is found guilty of a misdemeanor or a Class C, D, or E felony; is not seeking diversion for a sexual offense or a Class A or Class B felony; and does not have a prior conviction for a felony or a Class A misdemeanor.  Id. § 40-35-313(a)(1)(B)(i) (2006).  Upon the qualified defendant completing a period of probation, the trial court is required to dismiss the proceedings against him.  Id. § 40-35-313(a)(2) (2006).  The qualified defendant may then request that the trial court expunge the records from the criminal proceedings.  Id. § 40-35-313(b) (2006).

Eligibility for judicial diversion does not entitle the defendant to judicial diversion as a matter of right.  King, 432 S.W.3d at 323; State v. Parker, 932 S.W.2 945, 958 (Tenn. Crim. App. 1996).  Rather, the statute states that a trial court "may" grant judicial diversion in appropriate cases.  See T.C.A. § 40-35-313(a)(1)(A) (2012).  The trial court must consider the following factors in deciding whether a qualified defendant should be granted judicial diversion: (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; (6) the deterrence value to

the defendant and others; and (7) whether judicial diversion will serve the interests of the public as well as the defendant. Electroplating, Inc., 990 S.W.2d at 229 (citing Parker, 932 S.W.2d at 958; State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993) (citation omitted), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000)). The trial court may consider the following additional factors: "'[the defendant's] attitude, behavior since arrest, prior record, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility and attitude of law enforcement.'" State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993) (quoting State v. Markham, 755 S.W.2d 850, 852-53 (Tenn. Crim. App. 1988) (citations omitted)). The trial court must weigh all of the factors in determining whether to grant judicial diversion. Electroplating, Inc., 990 S.W.2d at 229 (citing Bonestel, 871 S.W.2d at 168). Finally, "a trial court should not deny judicial diversion without explaining both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration." State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997) (citing Bonestel, 871 S.W.2d at 168).

In King, the court explained how the Bise standard of review is applied to the trial court's consideration of the Parker and Electroplating factors:

Under the Bise standard of review, when the trial court considers the Parker and Electroplating factors, specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion, the appellate court must apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision. Although the trial court is not required to recite all of the Parker and Electroplating factors when justifying its decision on the record in order to obtain the presumption of reasonableness, the record should reflect that the trial court considered the Parker and Electroplating factors in rendering its decision and that it identified the specific factors applicable to the case before it. Thereafter, the trial court may proceed to solely address the relevant factors.

If, however, the trial court fails to consider and weigh the applicable common law factors, the presumption of reasonableness does not apply and the abuse of discretion standard, which merely looks for "any substantial evidence" to support the trial court's decision, is not appropriate. See Pollard, 2013 WL 6732667, at *11 ("Where, as here, the trial court fails to provide adequate reasons on the record for imposing consecutive sentences, the appellate court should neither presume that the . . . sentences are reasonable nor defer to the trial court's exercise of its discretionary

-4-

authority." (emphasis added)); see also Messer, 2014 WL 259706, at *3 n. 3 ("If . . . Pollard has any application to [judicial diversion], it would be to express that traditional notions of parameters, guidelines, or factors apply to inform and review discretionary decisions. For purposes of judicial diversion, those parameters, guidelines, and factors are embodied in existing caselaw . . . ."). In those instances, the appellate courts may either conduct a de novo review or, if more appropriate under the circumstances, remand the issue for reconsideration.

King, 432 S.W.3d at 327-28 (internal footnote omitted).

Turning to the case sub judice, the Defendant argues that a proper review of the required factors shows that he is a favorable candidate for judicial diversion. Specifically, he notes that he is a veteran of the United States Army, has held stable employment throughout much of his life, and has a supportive family willing to aid in his rehabilitiation. Further, his criminal history is minimal and he expressed remorse for his actions in the instant offenses. Additionally, he maintains that he suffers from back pain for which he has had multiple surgeries and takes medication and that he has been diagnosed with post-traumatic stress disorder, depression, and anxiety. He acknowledges that domestic violence is a "serious problem" but asserts that it is not "unique" to his marriage and argues that granting judicial diversion in this case would serve as "a signal" to others that rehabilitation is possible.

In denying judicial diversion, the trial court acknowledged that the Defendant had "led an otherwise law abiding life" and "appear[ed] to be a person that a lot of people care about." The court noted that the Defendant served in the military and suffered "some physical and emotional maladies" as a result. The court stated, however, that these factors must be balanced against the "two very, very serious offenses that were committed here." With regard to the offenses, the court stated,

A situation in April where a gun was used, and thank goodness nobody was hurt, but, you know, one person flinches the wrong way and we're standing here on a homicide charge instead of an aggravated assault charge. Couple that with the fact that 90 days later while [the Defendant was] on bond for that offense he suffers and commits a second violent offense against the same victim. Chokes her to the point where she is starting to lose her vision, and starting to lose consciousness . . . And nobody disputes the facts.

The court explained, "I've wrestled with, and I've struggled with, . . . but I've got to be able to put my head on a pillow at night, and I can't under those facts agree to judicial diversion. I just can't do it."

Initially, we acknowledge that the trial court did not explicitly state each factor on the record during its review, and in that regard, we note that the better course for the trial court is to more specifically discuss each factor on the record to aid in appellate review. However, the trial court is not required to "utilize any 'magic words' or specifically reference the case names 'Parker' and 'Electroplating' when discussing the relevant factors in order to receive the presumption of reasonableness." King, 432 S.W.3d at 327 n. 8. Our review of the record establishes that the court considered and weighed the required factors, identified those most relevant to the case at hand, and placed on the record its reasons for denying diversion. See id. Thus, the trial court's decision is afforded a presumption of reasonableness, and we must only determine whether there is "any substantial evidence" in the record to support the trial court's decision. See id.

The Defendant was 48 years old at the time of the offense and, as highlighted by the trial court, had led a substantially law-abiding life until the instant offenses. Although several factors weighed in favor of judicial diversion, including his social history and family support, minimal criminal record, and poor physical and mental health, the trial court was rightly concerned with the circumstances of the offense and the Defendant's amenability to correction. In the first incident, the Defendant repeatedly pointed a loaded gun directly at the victim's face and neck, intermittently firing the gun in the air to assure the victim that the gun was loaded, and fired several shots towards the victim's vehicle as she and her friend drove away from the scene. In the second incident, the Defendant attempted to strangle the victim and placed her in a chokehold until her vision became blurred and she almost lost consciousness. The circumstances of these offenses are very disturbing and weigh heavily against judicial diversion. See State v. Parson, 437 S.W.3d 457, 496 (Tenn. Crim. App. 2011) (affirming denial of judicial diversion where Defendant's amendability to correction and the circumstances of the offense "weighed heavily" against judicial diversion despite the satisfactory remaining factors) (citing State v. Jonathan B. Dunn, No. M2005-01268-CCA-R3-CD, 2006 WL 1627335, at *9 (Tenn. Crim. App. June 12, 2006) (affirming denial of judicial diversion where, even though factors (3), (4) and (5) weighed in the defendant's [favor], the circumstances of the offense were "particularly troublesome" where defendant held a gun six inches from the victim's head)); State v. Brian Carl Lev, No. E2004-01208-CCA-R3-CD, 2005 WL 1703186, at *3 (Tenn.Crim.App. Mar. 22, 2005) ("The denial of judicial diversion may be based solely on the nature and circumstances of the offense, so long as all the other relevant factors have been considered, and this factor outweighs others that might favorably reflect on the [defendant]'s eligibility.") (citing State v. Curry, 988 S.W.2d

-6-

153, 158 (Tenn.1999)). Further, while the Defendant asserts that he is amenable to correction, the trial court clearly disagreed, highlighting the fact that the Defendant committed a second violent offense against the same victim while on bond for the first offense. The trial court determined, and we agree, that these factors outweighed the other factors considered by the court. Accordingly, we conclude that the trial court did not abuse its discretion in denying the Defendant judicial diversion. He is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and analysis, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE